## UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

## CIVIL RIGHTS COMPLAINT FORM
### TO BE USED BY PRISONERS IN ACTIONS UNDER 42 U.S.C.

RECEIVED
NWFRC

NOV 1 2 2020

INMATE INITIALS

KENNETH EUGENE RICKERSON,
Inmate #319515.
 (Enter full name of Plaintiff)

AMENDED COMPLAINT

vs.

CASE NO: <u>4:20cv387-MW/HTC</u>

MARK INCH, Secretary, Department of Corrections;
CENTURION OF FLORIDA, Health Services Inc.;
MELINDA MIGUEL, Chief Inspector General, State of Florida;
BEN HASTY, Ophthalmologist, Advanced Eye Care;
CLIFF L. WOOD, Optometrist, Eye Care Clinic;
HERNANDEZ PEREZ, RMD;
LOPEZ-RIVERA, MD;
V. BENJAMIN, CHO;
CHRISTIEN BOTTKOL, ARNP;
T. BARTON, HSA;
B. BLOCKER, HSA;
T.R. AUSTIN, Inspector;
M. BROWN, Asst. Warden;
L. MARTIN, Mail Room Supervisor

(Enter name and title of each Defendant.
If additional space is required, uses the
blank area below and directly to the right.)

### ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES:

FILED USDC FLND TL
NOV 16 '20 PM5:05

## I.   PLAINTIFF:

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

Name of Plaintiff:   Kenneth Eugene Rickerson

Inmate Number:   319515

Prison or Jail:   Northwest Florida Reception Center – Main Unit

Mailing Address:   4455 Sam Mitchell Drive
Chipley, Florida 32428

## II.   DEFENDANT(S):

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **<u>every</u>** Defendant:

1 Mark Inch
Secretary
Florida Department of Corrections
501 South Calhoun Street, Tallahassee, FL 32399

2 Centurion of Florida, Health Services Inc.
Health Care Provider for F.D.O.C.
P.O. Box #4090 Farmington, Missouri 63640

3 Melinda Miguel
Chief Inspector
State of Florida
Suite 1902, The Capitol, Tallahassee, FL 32399

4 Ben Hasty
Ophthalmologist (Contractor)
Advance Eye Care
2500 West 23rd Street Panama City, FL 32405

5 Cliff L. Wood
Optometrist
Eye Care Clinic
408 E. Highway 90 Bonifay, FL 32425

6 Hernandez Perez
Regional Medical Director
Florida Department of Corrections
1203 Governors Square Blvd., Suite 600
Tallahassee, FL 32301

7 Lopez-Rivera
Medical Director
Northwest Florida Reception Center
4455 Sam Mitchell Drive Chipley, FL 32428

8 V. Benjamin
Chief Health Officer
Northwest Florida Reception Center
4455 Sam Mitchell Drive Chipley, FL 32428

9 Christien Bottkol
Assistant Registered Nurse Practitioner
1203 Governors Square Blvd., Suite 600
Tallahassee, FL 32301

10 T. Barton
Health Service Administrator
1203 Governors Square Blvd., Suite 600
Tallahassee, FL 32301

11 B. Blocker
Health Services Administrator
NWFRC (Main Unit)
Chipley, FL 32428

12 T.R. Austin
Inspector
Northwest Florida Reception Center
4455 Sam Mitchell Drive Chipley, FL 32428

13 M. Brown
Assistant Warden
Apalachee Correctional Institution West
52 West Unit Drive Sneads, Florida 32460-4165

14 L. Martin
Mail Room Supervisor
Apalachee Correctional Institution West
52 West Unit Drive Sneads, Florida 32460-4165

2

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

**Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. §1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.**

## IV.   PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE **ALL** PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

A.   Have you initiated other actions in **state court** dealing with the same or similar facts/issues involved in this action?
Yes(  )                              No(X)

B.   Have you initiated other actions in federal court dealing with the same or similar facts/issues involved in this action?
Yes(  )                              No(X)

C.   Have you initiated other actions *(besides those listed above in Questions (A) and (B)* in **either state or federal court** that relate to the fact or manner of your incarceration (including habeas corpus petitions) or the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?
Yes(  )                              No(X)

D.   Have you ever had any actions in **federal court** dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so, identify each and every case so dismissed:
Yes(X)                              No(  )

    1.   Parties to previous action:
        a       Plaintiff(s): Kenneth Eugene Rickerson

        b.      Defendant(s): Langford

    2.   Name of Judge: Karen Grievers        Case #: L.T. 2017-CA-1909;
                                                               DCA:1D18-4269

    3.   County and  Leon County Second Judicial Circuit:

    4.   Approximate filing date: In 2017

    5.   If not still pending, date of dismissal: July 9th 2019

    6.   Reason for dismissal: Failure to state a claim. And Langford dismissed

**(Attach additional pages as necessary to list state court cases.)**

1.    Parties to previous action:

    a.    Plaintiff(s): Kenneth Eugene Rickerson

    b.    Defendant(s): S. Gills

2.    Name of Judge: Gary R. Jones          Case #: 5:11-CV-00279-MP-GRT

3.    County and judicial circuit: Bay County:  11th Judicial Circuit

4.    Approximate filing date: December 5th 2011.

5.    If not still pending, date of dismissal: February 28th 2013.

6.    Reason for dismissal: Failure to state a claim, ADA Rights returned.

**(Attach additional pages as necessary to list state court cases.)**

1.    Parties to previous action:

    a.    Plaintiff(s): Kenneth Eugene Rickerson

    b.    Defendant(s): Don W. Howard

2.    Name of Judge: M. Casey Rogers.          Case #: 3:12-CV-54/MCR/EMT

3.    County and judicial circuit: Bay County, 11th  Judicial Circuit.

4.    Approximate filing date: September 4th 2010

5.    If not still pending, date of dismissal: November 26th  2012

6.    Reason for dismissal: Failure to state a claim.

**(Attach additional pages as necessary to list state court cases.)**

## V.    STATEMENT OF FACTS:

State briefly the FACTS of this case. Describe how <u>each</u> Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of person involved, dates, and places. <u>Do not make any legal arguments or cite to any cases or statutes</u>. You must set forth separate factual allegations in separately numbered paragraphs. You may make copies of this page if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. **(If there are facts which are not related to this same basic incident or issue, they must be addressed in a separate civil rights complaint.)**

    1. Plaintiff Kenneth Rickerson, DC# 319515, is a 52 year old blind inmate who requires treatment to prevent total blindness in his left eye.

    2. Plaintiff has a history of treatment from ophthalmologist and retina specialists for chronic uveitis since age 10, which they knew is related to harada's disease , which preserved

4

vision until reception at Lake Butler (Reception Medical Center)[1], in February of 2001, where Florida Department of Corrections medical personnel refused to continue treatment. Ultimately causing (total) vision loss in Plaintiff's right eye. (Several retina detachments which caused permanent scarring in Plaintiff's right eye).

3. In 2006, after total vision loss in Plaintiff's right eye, Florida Department of Corrections medical personnel referred Plaintiff to an Eye Clinic in Pensacola, Florida. Where retina specialist and other ophthalmologist (specializing in retina diseases) determined that Plaintiff had chronic uveitis and the Florida Department of Corrections (medical personnel's) failure to treat the chronic uveitis (with the appropriate treatment[2]), caused the permanent scarring in Plaintiff's right eye. Resulting in total blindness. Their diagnosis, Plaintiff is legally blind.

4. Subsequently, in 2007 at the Graceville Correctional Facility, (GEO Corporation private facility), medical personnel determined the total loss of vision in Plaintiff's right eye and thus discontinued treatment, which placed Plaintiff's vision in his left eye with irreparable harm.

5. From 2007 thru 2010, (GEO Corporation) Plaintiff suffered several episodic (retina detachments) in Plaintiff's left eye resulting in referrals to the "Twin Eye Clinic Tower" in Pensacola, Florida for steroid treatments which included prednisolone (steroid) eye drops.

6. From 2010 thru 2013 (Corrections Corporation of America) at The Graceville Correctional Facility (C.C.A. Medical MD Kats Kagan), in 2012 referred Plaintiff to Ophthalmologist Ben Hasty in Panama City, Florida for treatment of a detached retina, from the chronic uveitis (in Plaintiff's left eye only) (See also: paragraph two of this pleading).

7. Ophthalmologist Ben Hasty treated Plaintiff with the appropriate prednisolone eye drops every hour on the hour and steroid injections in left eye (every two weeks or as needed), to reduce inflammation, infections, redness in the eye, sensitivity to light, blurred vision, floaters and pain.

8. Early part of July of 2013, Ophthalmologist Ben Hasty discontinued all treatments for Plaintiff's chronic uveitis without discussion or review of relevant treatment history with the

---

1 This is the Florida Department of Corrections Medical Center located in Lake Butler, Florida.

2 These treatments include steroid eye drops; Prednisolone, for prevention of detachment of retinas.

Plaintiff. To maintain stability (to keep chronic uveitis in remission). Ophthalmologist Ben Hasty stated Plaintiff's chronic uveitis was cured and does not require any (ADA) "Americans with Disabilities Act" provisions, as Plaintiff is no longer legally blind.

9. Subsequently, at Lake Butler (Reception Medical Center) one week later Plaintiff declared a medical emergency for possible detached retina. Medical staff immediately notified and consulted with (RMC) Ophthalmologist Hayes for an emergency examination of Plaintiff's left eye.

10. Ophthalmologist Hayes examination revealed redness of the eye, inflammation, blurred vision, pain, sensitivity to light and a detached retina in the left eye, all associated with Plaintiff's chronic uveitis.

11. (RMC) Ophthalmologist Hayes instructed medical personnel to immediately return Plaintiff to Graceville Correctional Facility for further treatments and provide appropriate (ADA) provisions "as long as the Plaintiff is at (RMC)".

12. Upon the Plaintiff's return to Graceville Correctional Facility he was examined the next day by Optometrist Tugawell (on 7-19-2013), who concurred with Ophthalmologist Hayes that Plaintiff's retina in left eye was detached, and advised Graceville Correctional medical staff that the Plaintiff needs to see a Retina Specialist; Graceville Correctional medical department immediately returned Plaintiff to Ophthalmologist Ben Hasty (on 7-19-2013).

13. Ophthalmologist Ben Hasty's diagnosis after a thorough examination (on 7-19-2013) confirmed the retina in Plaintiff's left eye was detached.

14. Ophthalmologist Ben Hasty contacted and informed Graceville Correctional facility, M.D. Kats-Kagan, that he, Ophthalmologist Ben Hasty was referring Plaintiff to Retina Specialist Christopher Willingham in Panama City, Florida (on 7-19-2013).

15. Ophthalmologist Ben Hasty sincerely apologized to Plaintiff and stated he is not qualified to treat Plaintiff's chronic uveitis. And (he) Ophthalmologist Ben Hasty was referring Plaintiff to a Retina Specialist today who can treat Plaintiff's chronic uveitis.

16. (7-19-2013) Retina Specialist Willingham referred Plaintiff to Bay Medical Center (Bay Med Diagnostic) Panama City, Florida for testing. (26 vials of blood taken) (Cost $1,800). Retina Specialist Willingham ordered a complete historical medical record search from Ophthalmologist Ben Hasty as well as previous Ophthalmologist and Retina Specialist. (Retina

Specialist Willingham immediately ordered the Plaintiff to start prednisolone eye drops every hour and atropine). Serious detachment of retinal pigment epithelium OS condition: new Panuveitis OU condition: new.

17. (7-22-2013) Retina Specialist Willingham reviewed results of blood test and ordered continued use of prednisolone eye drops with atropine. Referred Plaintiff to Retina Specialist Harold L. Brooks Jr. in Tallahassee, Florida for a second opinion.

18. (7-25-2013) Retina Specialist Brooks injected Plaintiff with a steroid pellet called Ozdurex 0.7mg in left eye to reduce inflammation and stabilize the left eye. Continue Prednisolone eye drops with Atropine. And follow up with Retina Specialist Willingham in Panama City, Florida. Diagnosis chorioretinitis, the left eye has posterior synechia, posterior uveitis, and exudative RD. We believe that he has a condition known as Harada's Disease.

**The statement of facts of the amended complaint#1-#18  should not be omitted because they are relevant to the history and knowledge of each defendant as it relates to the 4-years statute of limitations starting in statement of case and facts #19 of the amended complaint, accordingly, the Plaintiff should not omit from Plaintiff's  amended complaint any allegations which do, either alone or in conjunction with other allegations, support the elements of the eight amendment failure to treat claim as to any of the named defendant.**

19. From (05-28-2014 until 05-30-2019) Plaintiff was receiving prednisolone eye drops 4 x a day (every 6 hours).

20.   On (03-18-2018) Optometrist Woods checked the pressure in the Plaintiff's eyes. Was concerned and monitored that pressure for several months. Because of the increase pressure Optometrist Woods referred the Plaintiff to Ophthalmologist Ben Hasty.

21. On (02-15-2019) Centurion Ophthalmologist Ben Hasty advised a change in the Plaintiff medication (prednisolone eye drops). Which Plaintiff disagreed with. (Ophthalmologist Ben Hasty stated Plaintiff's Uveitis was not active and requires no treatment). (See also paragraph #15), "This assessment by Ophthalmologist Ben Hasty was outside his qualification or without the recommendation from a Uveitis Specialist or a Retina Specialist.

22. On (05-26 or 05-30-2019) ARNP Bottkol of Centurion of  Florida Health Services

discontinued the Plaintiff's prednisolone 4 x a day (every 6 hours) leaving the Plaintiff without any treatment for his chronic uveitis and numerous eye diseases associated with Harada's Disease.

23. On (06-5-2019) Plaintiff was seen by Optometrist Woods who reviewed all medical records from Retina Specialist Brooks and Willingham, who stated the level of care required he (Optometrist Woods) was unqualified to provide. And referred Plaintiff back to Ophthalmologist Ben Hasty. Optometrist Woods stated that he does not need to see Plaintiff for any reason.

24. On (06-14-2019) Ophthalmologist Ben Hasty noted incomplete evaluation due to Plaintiff (disagreement) after Ophthalmologist Ben Hasty declined refills of prednisolone 4 x a day eye drops (every 6 hours). By stating that Plaintiff has " no active Uveitis" Leaving Plaintiff without treatment for chronic uveitis. To stay in remission and the Plaintiff's numerous eye diseases associated with Harada's Disease. Thus, risking retinal detachment and total blindness.

25. On (06-19-2019) Ophthalmologist Ben Hasty is being referred  for  investigaion for administrative and criminal violations (by Inspector General's Office). In reference to Ophthalmologist Ben Hasty discontinuing Plaintiff's uveitis treatment, and the numerous eye diseases associated with harada's disease ordered by   Retina Specialist Willingham who Ophthalmologist Ben Hasty referred the Plaintiff to because he, Ophthalmologist Ben Hasty didn't have the qualification to treat chronic uveitis and the numerous eye diseases associated with harada's disease (chronic uveitis as well as harada's has no cure. It can only be treated by qualified specialist.

26. After several sick-call appointments concerning Plaintiff suffering from a possible detached retina, redness of the eyes, sensitivity to light, blurred vision, floaters and pain, nurses Messer and West provided Ibuprofen for pain during Plaintiff's sick-call appointments. And, immediately referred Plaintiff to (ARNP) Bottkol.

27. On (07-08-2019) at Plaintiff scheduled appointment with ARNP Bottkol. Plaintiff was told that his chronic uveitis was cured. And, there was no medical reason for the Plaintiff to be seen by any kind of specialist. (ARNP) Bottkol did not examine Plaintiff for any reason. And Plaintiff was told to get out.[3]

---

3. ARNP Bottkol on (07-8-2019) may or may not have known. Ophthalmologist Ben Hasty was under administrative and criminal investigation. For this diagnosis (she) ARNP Bottkol used Ophthalmologist Ben Hasty's diagnosis to discontinue Plaintiff treatment for chronic uveitis and the numerous eye diseases associated with harada's disease.

28. On 7-29-19 mail room supervisor L. Martin returned a medical CD that contained medical records from the two (2) retina specialists (Brooks and Willingham).

29. On 7-31-19 C. Thompson stated that the mail room was not aware that on 9-16-2016 the Plaintiff was approved by the FDOC to receive legal material on CD (medical records) because of the Plaintiff's disability. The Plaintiff was instructed by C. Thompson, an employee of the Department of Corrections to have the (2) two Retina Specialists return the Plaintiff's medical CD so that the CD could be issued to the Plaintiff.

30. On 8-13-19 Health Service Administrator Blocker and Medical Director Lopez Rivera both employed by Centurion Medical Department made a fraudulent medical diagnosis by stating, "during your evaluation on June 15, 2019, the Ophthalmologist determined that you did not have chronic uveitis."

31. On 9-19-19 (HSA) T. Barton stated, "Your allegations that Centurion or staff have retrieved medical records without your consent cannot be corroborated. There is no indication that previous outside records are required. Without a signed consent, medical records cannot obtain, nor and the above mentioned facility, release any information."

32. On 9-26-19 Assistant Warden Brown along with (HSA) Blocker and (CHO) V. Benjamin continued to violate Florida Statutes concerning medical copies involved in pre suit litigation and would not let the Plaintiff obtain any copies of the Plaintiff's medical records without paying for them first.

33. On 9-27-19 Centurion (HSA) Barton and mail room supervisor L. Martin violated several Federal Postal laws, Hippa laws, and Florida laws by allowing (HSA) Barton to illegally receive the Plaintiff's mail (Plaintiff's medical CD records from the (2) two specialists) and placed in Plaintiff's medical file without his written consent. (HSA) Barton and (CHO)V. Benjamin then made a fraudulent statement (lied) by stating, "Be advised that you do not have approval to assume possession of the disk you requested and therefore, it will remain sealed and with your medical record, until otherwise instructed." The Plaintiff filed a postal complaint against (HSA) Barton, mail room supervisor L. Martin, and Assistant Warden of Programs M. Brown prior to this incident. Mail room supervisor L. Martin no longer works in the mail room.

34. On 10-2-19 Another grievance was filed against Centurion Medical Department for

9

failure to administer medication at the proscribed time.

35. On 10-2-19 Assistant Warden Brown failed to enforce Plaintiff's ADA rights and the Plaintiff's approval by the FDOC to receive CD's against Centurion Medical Department.

36. On 10-8-19 Assistant Warden Brown refused to follow Fla. Stat. By concealing the Administrative and criminal violations that per Florida law must be investigated by the Office of the Inspector General against (HSA) Barton and mail room supervisor L. Martin concerning this medical CD.

37. On 11-13-19 (HSA) Barton made another fraudulent statement, by stating, "the release of information that you refused to sign was for the attorney to have access to the grievances filed with the Florida Department of Corrections, it was not for medical records access." The lawyers that were requesting the Plaintiff's consent to access the Plaintiff's medical records represents Centurion Medical Department. That law firm does not work for Florida Department of Corrections.

38. On 12-26-19 Prison Officials approved the Plaintiff could receive his medication at the prescribed times.

39. On 1-28-20 At an appointment with (ARNP) Rackard, concerning a possible detached retina and briefly reviewed the Plaintiff's medical records and stated that she believed the Plaintiff needed to be seen by the Plaintiff's treating retina specialist (Willingham) but have to discuss it first with (HSA) Barton and (CHO) V. Benjamin. (ARNP) Rackard stated she believed they will want the Plaintiff to see Centurion Ophthalmologist Ben Hasty first but she would argue the fact that Ophthalmologist Ben Hasty had referred all treatments of the Plaintiff to Retina Specialist Willingham (since 7-19-2013) and Retina Specialist Willingham is the treating specialist.

40. On 1-29-20 The Plaintiff declared a medical emergency for a possible detached retina. The Plaintiff was shortly seen right after that by ARNP Bottkol, in the presence of Nurse Messer, who (ARNP) Bottkol walked in the medical hallway "screaming" stating, "I saw you watching me." (ARNP) Bottkol thrust her palm of her hand in the Plaintiff's face then (ARNP) Bottkol told the Plaintiff's assistant to bring Plaintiff in the examination room, where (ARNP) Bottkol sat the Plaintiff down and snapped the Plaintiff's head back with so much force, the Plaintiff and his assistant had to tell (ARNP) Bottkol to stop, (ARNP) Bottkol then stated to the Plaintiff, still

10

yelling, "You better not be wasting my time". The Plaintiff's assistant then took the Plaintiff to see Optometrist Wood. After the Plaintiff's examination Optometrist Wood stated that he saw No Detached Retina. Now (ARNP) Bottkol between noon and 1:00pm, (ARNP) Bottkol stated to other Centurion medical staff in front of the ER, "I'm going to lock (inmate) Rickerson up for lying to staff." (ARNP) Bottkol, stated, "(Inmate) Rickerson is faking, I'm going to take his cane, Rickerson does not need to see an Ophthalmologist, he's faking." (ARNP) Bottkol also stated, "I will not have another Donny Phillips (DC# 789552)."

41. On 2-4-20 The Plaintiff had another sick call appointment concerning a detached retina which Nurse Blake assessed the Plaintiff for a detached retina and a pain level of (10) ten. Nurse Blake immediately told the Plaintiff per procedure she must refer the Plaintiff immediately to an ARNP or a doctor, which Nurse Blake did. Nurse Blake and (ARNP) Bottkol in the MSB examination room (ARNP) Bottkol informed the Plaintiff that she would "not" give him anything for pain. Retina Specialist Willingham instructed M.D. Kats-Kagan to treat the pain associated with a detached retina and numerous eye diseases with Tylenol #4.

42. On 2-14-20 The Plaintiff was informed that the urgent consult with Ophthalmologist Ben Hasty had not been scheduled or approved because the Centurion staff member responsible for scheduling appointments and getting approval has been out sick with the flu for two (2) weeks.

43. On 2-21-20 Once again, Ophthalmologist Ben Hasty referred the Plaintiff to Retina Specialist Willingham to treat the Plaintiff symptoms associated with a detached retina, chronic uveitis, and the Plaintiff numerous eye diseases associated with harada's disease. For which Ophthalmologist Ben Hasty is unqualified to treat and Retina Specialist Willingham has been the treating specialist since 7-19-2013. The original date Ophthalmologist Ben Hasty referred all medical treatment concerning the Plaintiff's eyes to Retina Specialist Willingham as the treating specialist.

44. On 2-21-20 Ophthalmologist Ben Hasty made a medical diagnose that he could not get the Plaintiff left eye to dilate nor did he have the equipment at NWFRC or at his private practice office to do so. On 1-29-20 Optometrist Woods stated he did not see the Plaintiff retina detachment. This statement by Dr. Woods is a clear case of a fraudulent diagnosis concerning the Plaintiff's retina detachment. Dr. Woods is not qualified nor does he possess the medical

equipment to examine Plaintiff's retina in his left eye without the equipment and qualifications of a retina specialist. This problem with dilating of the Plaintiff left eye has been documented by Ophthalmologist Ben Hasty since February of 2019. (See paragraph #40, Statement of Facts where Optometrist Woods stated that level of care required he (Optometrist Woods) was unqualified to provide).

45. On 3-19-20 (CHO) V. Benjamin states, "Upon review, a consult has been generated and submitted for referral to see a retina specialist. Your consult has been approved and we are currently awaiting an appointment date from the specialist. Your allegations that medical does not believe your complaints of eye pain and vision impairment cannot be corroborated." Since 1-29-2020 the Plaintiff has been to sick call well over (10 x's) ten times trying to receive appropriate treatments for the Plaintiff's Chronic Uveitis and numerous eye diseases associated with the Plaintiff's harada's disease. The Plaintiff has not receive any appropriate pain medication.

46. Between 3-29-2020 and 4-5-2020 Assistant Warden M. Brown of Programs and (HSA). T. Barton were relieved of their official duties at Northwest Florida Reception Center.

47. O 3-31-2020 (HSA) T. Barton in informal grievance #110-2003-0219 made another fraudulent statement by stating, "You have refused recommended treatment previously." The Plaintiff have never, and his medical records will prove it, refuse any treatment from Ophthalmologist Ben Hasty. (HSA) T. Barton went on to state, "A consult has been generated, submitted, and approved for referral to a retina specialist, however, we are currently awaiting scheduling of your appointment. You will be notified of appointment. Watch callout."

48. On 4-7-2020 Centurion Medical Department sent Richard Sirota (DC# 559403) and another white inmate to Advance Eye Care in Panama City, Florida for treatment with Ophthalmologist Ben Hasty.

49. On 4-9-2020 The Plaintiff went to sick call again for about the 15th time concerning the decrease in vision in left eye pain level of ten and back pain all associated with Harada's disease. The Plaintiff was told that all appointment date had been scheduled with a retina specialist but it will take 4-6 weeks before the plaintiff appointment date.

50. On 4-9-2020 A family member contacted the Plaintiff's treating retina specialist, Christopher Willingham, to see if the specialist was receiving patients the family member was

told by Retina Specialist Willingham's office, that because of the Covid-19 pandemic they were only receiving patients that only needed regular injections and patients that required urgent medical treatment.

51. On 4-10-2020 Inmate Richard Sirota (white male) DC#559403 had an appointment with (CHO) V. Benjamin. At this appointment inmate Richard Sirota signed another consult for follow up treatment with Ophthalmologist Ben Hasty of Panama City, Florida.

52. On 4-12-2020 at a sick call appointment for about the Plaintiff's 16th sick call concerning chronic uveitis, the numerous eye diseases associated with harada's disease and the pain level of 10. The sick call nurse was seriously concerned about the Plaintiff's medical issues. And stated he (the Nurse) was placing the Plaintiff's medical file on the desk of the Director of Nursing, Mrs. Conner, with a sticky note for Mrs. Conner, (HSA) B. Blocker, and (CHO) V. Benjamin immediate assessment. The Plaintiff to this day was never assessed or treated by any Centurion medical staff for this sick call visit.

53. On 4-16-2020 it was stated in formal grievance log number 2004-110-039: "Records were available and thoroughly reviewed. Records indicate that when you were seen by the Ophthalmologist, it was recommended that you be referred to Dr. Willingham. The consult was submitted for this appointment, however when it was approved by Utilization Management, the approval was for scheduling at RMC. This has been corrected, and Dr. Willingham's office has been notified of the need for the appointment. Please be advised, that this could take several weeks, due to the current Covid-19 pandemic. As action, has been initiated, you may consider your grievance approved. V. Benjamin C.H.O. N.W.F.R.C."

54. On or around 5-11-2020, prison officials transported inmate Steven Hartzog (white male), DC# Q14686, to Retina Specialist Christopher Willingham in Panama City, Florida (the Plaintiff still has not received any treatment or been transported to his treating retina specialist, Christopher Willingham for treatment).

55. On 5-20-2020, Plaintiff went to his Retina Specialist appointment the following diagnosis was given; left eye has fluid in retina and around the retina, a servile detachment of the retina and permanent scarring of the retina from continuing detachments of the retina. pressure in left eye 10, right eye pressure 11, macular disturbance. treatment plan Durezol (Difluprednate Ophthalmic Emulsion), one drop in the left eye 4 x a day. Atropine Sulfate Ophthalmine

13

Solution, one drop in the left eye 4 x a day. Dorzolamide HCJ Ophthalmic Solution, one drop in both eyes twice daily. Timolol Maleate Ophthalmic Solution, USP one drop in both eyes twice daily. Latanoprost Ophthalmic Solution, one drop in both eyes at bed time. And then Plaintiff was quarantined for 16 days. ((ARNP) Bottkol and (CHO) V. Benjamin change the specialist treatment of Atropine to one time a day.)

56. On 5-28-2020, (ARNP) Bottkol wrote prescription for Durezol Opth (steroid eye drops) 5ml with no refill.

57. On 5-29-2020, The Plaintiff received his first treatment of Durezol at 1700hrs.

58. On 6-6-2020, Security Prison Officials at MSB refused and delayed noon scheduled treatment of Durezol.

59. On 6-8-2020, at the Plaintiff's scheduled treatment of Durezol he discovered that the 5ml Durezol was emptied and there was none in stock because (ARNP) Bottkol did not order a refill as prescribed by the Plaintiff treating retina specialist.

60. On 6-10-2020, at noon, at the Plaintiff's scheduled treatment, the Plaintiff's Durezol was refilled and the Plaintiff was treated.

61. On 6-10-2020, at the Plaintiff's 2300 treatment Sgt. Corbit refused to return to the dorm to escort the Plaintiff to his required 2300 hr treatment. Sgt. Corbit state, "Plaintiff could go later on after his 2300hr scheduled time. Plaintiff dorm officer notified medical who state the Plaintiff must come to medical immediately to receive his treatment. The Captain sent a male Sergeant to escort the Plaintiff to medical to receive his treatment, while the male Sergeant and the Plaintiff were on their way to medical, female Sgt. Adams stated, to the Plaintiff, "you could have waited and went after the 2300hrs."

62. On 6-13-2020, Officer Crouch denied or delayed the Plaintiff's noon scheduled medical treatment.

63. On 6-13-2020, at approximately 5pm at the MSB outside pill window the Plaintiff was called to receive medication by Nurse Dallas. The Plaintiff explained to Nurse Dallas that he had already received his medication at the scheduled time. The Plaintiff respectfully expressed to Nurse Dallas that this must be some sort of mistake and asked her who prescribed the medication and what medication was he was being administered. Nurse Dallas then informed the Plaintiff that it was cholesterol meds prescribed by Bottkol and Benjamin. Plaintiff asked her to please

confirm the prescription and date she told the Plaintiff, "No, she would not do such!" The Plaintiff explained to Nurse Dallas that the only thing (CHO) V. Benjamin told him (on 6-1-2020 while in confinement for security quarantine reason) was that he, (CHO) V. Benjamin, received the Plaintiff's labs and everything looks good, there was "no" issues. Nurse Dallas then began to raise her voice yelling in a belligerent and unprofessional manner telling the Plaintiff that at his last scheduled appointment (6-1-2020 while in confinement for security quarantine reason) with (CHO) V. Benjamin that he, (CHO) V. Benjamin, did talk to me about prescribing me cholesterol medication, Nurse Dallas then continued by stating how the Plaintiff had always been prescribed cholesterol medication he just hadn't been taking them. Note: the only way Nurse Dallas would have known about cholesterol medication is that Nurse Dallas, (CHO) V. Benjamin, and ARNP Bottkol had access the medical CD, illegally placed in Plaintiff's medical records by (HSA) Barton, without the Plaintiff's consent or right to disclose Plaintiff's medical CD to Centurion Medical Department. In saying that, had (CHO). V. Benjamin mentioned/explained to the Plaintiff about the need for cholesterol medication, Plaintiff would not have refused it. The Plaintiff is a blind inmate who Centurion Medical Personnel must properly and professionally inform Plaintiff on their treatment plan for him. "No" Centurion Medical Staff discussed with Plaintiff the need for this cholesterol medication.

64. On 6-14-2020, Prison Security Officials denied Plaintiff total access to my noon medical treatment (did not receive it at all).

65. On 6-16-2020 Captain Eker placed E1-dormitory on lock down. This action caused Plaintiff to be denied his noon medical treatment.

66. On 6-16-2020 At Plaintiff's 2300hr (11pm) treatment prison security official for whatever reason denied Plaintiff that schedule time for treatment, but between 0000-0030hr (12:00am-12:30am) prison security officials escorted Plaintiff to medical to receive his eye drop medication (Latanaprost and Durezol) that must be administered before bedtime.

67. On 6-23-2020 the Plaintiff was denied his 2300hr treatment by security prison officials.

68. On 6-24-2020 the Plaintiff was denied his 2300hr treatment by security prison officials.

69. On 6-29-2020, Plaintiff went to his Retina Specialist appointment the following

diagnosis was given; fluid in and around the retina and the servile detachment of the retina has been resolve, will continue treatment of the retina to keep in remission, any servile detachments of the retina in the future. Treatment plan; continue all treatment as prescribed on 5-20-2020 with refills. Only change Atropine to one time a day. Plaintiff vision lost in left eye because of discontinuing treatment of the prednisolone by Ophthalmologist Ben Hasty, (ARNP) Bottkol, and (CHO) V. Benjamin, is permanent. And then Plaintiff was quarantined for 14 days.

70. On 6-29-2020, Centurion Medical Department denied the Plaintiff his 2300hr (11:00pm) treatment.

71. On 6-30-2020, Centurion Medical Department denied the Plaintiff his 2300hr (11:00pm) medical treatment.

72. On 7-1-2020, Centurion Medical Department denied the Plaintiff his 1700hr (5:00pm) medical treatment.

73. On 7-2-2020, Centurion Medical Department denied the Plaintiff his 0000hr (12:00pm noon) medical treatment.

74. On 7-5-2020, during the Plaintiff 0500hr (5:00am) medical treatment, Centurion Medical Department informed the Plaintiff that they had run out of the Plaintiff's Atropine eye drops.

75. On 7-6-2020, during the Plaintiff's 0500hr (5:00am) medical treatment, Centurion Medical Department informed the Plaintiff that they had run out of the Plaintiff's Dorzolamide eye drops.

76. On 7-16-2020, Security Officials denied the Plaintiff his 2300hr (11:00pm) medical treatment.

77. On 9-10-2020 through 9-16-2020 Plaintiff was denied medical treatment of Durozol steroid eye drops.

## VI.    STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts alleged in Section V. **If claims are not related to the same basic incident or issue, they must be addressed in a separate civil rights complaint.**

1. **Failure to treat under 42 U.S.C. §1983 (Inch, Injunctive Relief) Plaintiff is entitled to**

16

declaratory and injunctive relief against Defendant Mark Inch in his official capacity, for a systemic failure, through his agents and employees ("staff") to treat Plaintiff's known serious medical conditions in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five Statement of Facts, subsections V. 1-79 and as follows:

A. Plaintiff is intermittently denied care and treatment, including critically needed medications and regular scheduled appointments with treating Retina Specialist Christopher Willingham and periodic checks with Willingham for inflammation in the eyes, holes in the retina, loss of vision, detached retina, chronic uveitis and the numerous eye diseases associated with the Plaintiff's harada's disease.

B. Plaintiff has been waiting for years for medical staff to refer him to treating retina Specialist Willingham. Plaintiff had to wait weeks for medically prescribed eye drops that "run out," and medications "eye drops" prescribed by treating Retina Specialist Willingham was discontinued by unqualified medical staff.

C. Medical staff countermand, ignored and failed to acknowledge Plaintiff numerous eye diseases associated with Rickerson's harada's disease. Medical staff deprive Plaintiff of Retina Specialist Willingham's prescribed treatment plan for the Plaintiff's chronic uveitis and harada's disease. Medical staff deprived Plaintiff of treatment and medication in retaliation for over one hundred grievances, criminal complaints and Inspector General investigation filed against them. Without any fear of disciplinary actions being brought against the medical staff.

D. Staff deny Plaintiff an adequate medication for his treatment.

E. Medical staff withheld medical treatment from Plaintiff under the premise that Retina Specialist Willingham's treatment plan for Plaintiff was not needed. Medical staff are not disciplined for engaging in said behavior.

F. Security staff deny Plaintiff scheduled times to receive prescribed medication "eye drops" at the time prescribed by medical department.

G. Staff failed to follow prescribed times of administering Plaintiff's eye drops in a timely manner within the mar time, which creates a dangerous medical issue due to the frequency of his need.

H. Plaintiff is deprived of Prednisolone eye drops which is needed to prevent and treat inflammation in the eye's, holes in the retinas, loss of vision, detached retina, chronic uveitis, the numerous eye diseases associated with harada's disease and to keep the numerous eye diseases in remission (stable).

I. Staff deny Plaintiff access to medical CD sent by Retina Specialist Harold L. Brooks Jr. (2nd opinion) and treating Retina Specialist Willingham. This allowed staff to deny or acknowledge that Plaintiff was required treatment for chronic uveitis and to prove that he in fact has harada's disease.

J. Staff violated several federal (mail), state and Hippa laws by retrieving Plaintiff's medical CD through the mail and placed in Plaintiff's medical file all without Plaintiff's consent, staff denied Plaintiff access to the medical CD.

K. Staff has frequently made fraudulent statements that Plaintiff has refused medical treatment, Plaintiff has refused "no" medical treatment. Staff has used this fraudulent statement as a tool to deny Plaintiff's must needed medical treatment by two (2) retina specialists, Retina Specialist Brooks Jr., Retina Specialist Willingham.

   (1) Inch has a non-delegable duty to provide Plaintiff with needed medical care and to protect him from known dangers of serious harm.

   (2) As a proximate result of Defendant's denial of care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

   (3) Plaintiff is blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

   WHEREFORE, Plaintiff seeks relief as noted below.

2. **Failure to treat under 42 U.S.C. §1983 (Centurion)**

   **Plaintiff is entitled to relief against Defendant Centurion for a systemic failure to treat known serious medical conditions in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five, Statement of Facts, subsections V. 20,- 27; 30-37,39; 40-57,59; 60 -63,69; 70-75,77. and as follows:**

A. Centurion took over the contract for prisoner health care from Corizon, hired most of

18

the Corizon staff, and continued Corizon's denial of care.

B. Centurion has failed to provide medical care as follows:

    (1) Centurion has continued the Corizon policy of denying and delaying health care to prisoners – as little care as possible, as late as possible.

    (2) Centurion which was responsible for Plaintiff's medical care from May 23, 2016 to the present, has a national corporate policy to provide prisoners as little care as possible as late as possible in order to maximize profits.

    (3) Because Centurion encourages employees to minimize health care costs even when it puts prisoners at risk, medical staff felt free to deny care.

    (4) Centurion unqualified and short-staffs medical positions so Plaintiff sometimes called for a medical appointment, then sent away without care (appropriate treatment).

    (5) Centurion has a practice of denying care then fabricating a "refusal of care," writing "refused to sign" where the inmate's signature should be.

    (6) Centurion fails to discipline medical staff for withholding medical care.

    (7) Centurion has a practice of under-paying medical doctors by permitting them to work short hours so they are rarely available to inmates.

    (8) Centurion has violated Federal (mail), State and Hippa laws by retrieving Plaintiff's medical CD without Plaintiff's consent. Then Centurion placed the medical CD in Plaintiff's medical file without Plaintiff's consent. Centurion then denied Plaintiff any access to Plaintiff's own medical CD.

C. As a proximate result of Defendant's denial of care, Plaintiff has suffered significant physical injury, mental distress, humiliation and pain, and will continue to suffer such injuries in the future unless relief is granted.

D. Plaintiff is blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and cost.

    WHEREFORE, Plaintiff seeks relief as noted below.

**3. Failure to Treat under 42 U.S.C. §1983 (Miguel)**

**Plaintiff is entitled to relief against Defendant Melinda Miguel for failure to treat**

19

**know serious medical conditions, or interference with such treatment in violation of the Eighth Amendment to the U.S. Constitution, for a systemic failure, through her inspectors and staff, as further set out in section five Statement of Facts, subsections V. 25, 36 and as follows:**

A. Miguel Inspectors at Northwest Florida Reception Center refuse to investigate prison security staff for denying Plaintiff scheduled times for medication (steroid eye drops).

B. Miguel Inspector's refuse to investigate Advance Eye Care Ophthalmologist Ben Hasty for administrative and criminal violation against Plaintiff which allowed Plaintiff to continue to be denied appropriate treatment. This investigation was "approved" by Centurion Medical Department and referred to the Office of the Inspector General for investigation per law.

C. Miguel Inspectors refusal to investigate prison officials and Centurion medical staff for mail room violations, Hippa violations, Federal (Plaintiff's medical CD) and State violations, which allowed prison officials and Centurion medical department to continue to deny Plaintiff appropriate medical treatment.

   (1) As a proximate result of Defendant's denial of investigation/care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain and will continue to suffer such injuries in the future unless relief is granted.

   (2) Plaintiff is blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

   WHEREFORE, Plaintiff seeks relief as noted below.

4. **Failure to Treat under 42 U.S.C. 1983 (Hasty, Woods, Lopez)**
   **Plaintiff is entitled to relief against Defendants Ben Hasty, Cliff L. Wood, and Lopez Rivera for failure to treat known serious medical conditions or interference with such needed treatment in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five Statement of Facts, subsections (Hasty V. 21,24,25; 43,44; 48, 69;)(Wood V. 20,23.40, and 44); (Lopez V. 30.) and as follows:**

A. Hasty referred treatment to Retina Specialist Willingham on 7-19-13 and conceded he could not treat the Plaintiff's chronic uveitis, but continued to diagnose and treat

Plaintiff's numerous eye diseases without fear of discipline.

B. Hasty discontinued prednisolone eye drops prescribed per Retina Specialist Willingham, without fear of discipline.

C. Hasty made a medical diagnosis that Plaintiff's chronic uveitis was not active and discontinued treatment prescribed by Retina Specialist Willingham, without fear of discipline.

D. Hasty made a medical diagnosis that Plaintiff's left eye could not be dilated nor did he have the equipment at Northwest Florida Reception Center or at Advance Eye Care to do so. Therefore, he could not detect whether Plaintiff had a detached Retina in his left eye.

E. Hasty again referred Plaintiff to Retina Specialist Willingham for treatment because, he Hasty, did not have the equipment or qualification to treat Plaintiff's numerous eye diseases.

F. Advance Eye Care ophthalmologist continued to help Centurion in cost cuts to minimize the level of treatment and medication.

G. Advance Eye Care ophthalmologist discontinued treatments by Retina Specialist Willingham that was associated with Plaintiff's chronic uveitis and numerous eye diseases associated with harada's disease.

H. Advance Eye Care ophthalmologist made medical diagnosis for which he was not qualified to do by superseding the treatment plan of Plaintiff prescribed by two (2) Retina Specialists.

I. Advance Eye Care ophthalmologist had knowledge he could not treat Plaintiff's chronic uveitis and numerous eye diseases associated with harada's disease. Thus, "causing" possible serious detachment of retina, inflammation of the eyes, redness of the eyes, sensitivity to light, blurred vision and severe pain. Thereby, leaving Plaintiff's numerous eye diseases unstable and out of remission.

J. Advance Eye Care ophthalmologist at the approval of Centurion Medical Department. As it is outlined in the Grievance Exhaustion Chart #15. Advance Eye Care ophthalmologist in informal grievance #110-1906-0146 became the subject of an Inspector General's Office criminal investigation. For Advance Eye Care

21

Ophthalmologist conduct in the treatment of Plaintiff's numerous eye disease.

K. Woods made a medical diagnosis that he Woods was not qualified to treat Plaintiff's numerous eye diseases.

L. Woods, when asked by ARNP Bottkol to make a medical diagnosis concerning Plaintiff's possible detached retina in left eye, Woods made a fraudulent diagnosis, without fear of discipline.

M. Woods, fraudulent diagnosis was, he Woods, did not see a detached retina.

N. It would be impossible for Woods to see a detached retina when Plaintiff's left eye would not dilate because he did not have the equipment at Northwest Florida Reception Center to do so.

O. Lopez and H.S.A. B. Blocker made a fraudulent statement that Hasty determined that Plaintiff did not have chronic uveitis, without fear of discipline.

P. As a proximate result of Defendant's denial of care, Plaintiff has suffered significant physical injury, mental distress, humiliation and pain, and will continue to suffer such injuries in the future unless relief is granted.

Q. Plaintiff is blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and cost.

WHEREFORE, Plaintiff seeks relief as noted below.

5. **Failure to treat under 42 U.S.C. 1983 (Blocker, Barton,Benjamin)**

**Plaintiff is entitled to relief against Defendants B. Blocker, T. Barton, and V. Benjamin for failure to treat known serious medical conditions or interference with such needed treatment in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five Statement of Facts, subsections (Blocker,(V. 30, 33, 36, 37, 46,47) (Barton, V. 31,33, 36,37, 46, 47)  (Benjamin V. 32,33,39, 48, 51-53, 55,63,69.) and as follows:**

A. Blocker and Lopez made a fraudulent statement that Hasty determined that Plaintiff did not have chronic uveitis, without fear of discipline.

B. Barton referred Ben Hasty to the Office of the Inspector General for a criminal and administrative investigation, for he (Hasty's) conduct of his medical treatment of

Plaintiff.

C. Barton denied Plaintiff access to his own medical records to continue to deny Plaintiff appropriate medical treatment, without fear of discipline.

D. Barton illegally obtained Plaintiff's mail that contained a medical CD from two (2) Retina Specialists Brooks, and Willingham, without fear of discipline.

E. Barton placed Plaintiff's medical CD in Plaintiff's Florida Department of Correction medical records illegally without prior consent from Plaintiff, without fear of discipline.

F. It is my belief that Barton intentionally, in a retaliatory nature, for the over hundred grievances wrote against Centurion medical department, did not schedule the appropriate appointment with Retina Specialist Willingham, to further deny Plaintiff the required treatment, without fear of discipline.

G. Benjamin committed several obstruction of justice violations by not referring grievances against Centurion medical staff that required per law an Inspector General investigation, without fear of discipline.

H. Benjamin at a face to face appointment with Plaintiff implied that Plaintiff was faking about his eye disease and symptoms.

I. Benjamin as Chief Health Officer of Centurion continues to support Centurion's policy of delay and refusal of treatment, without fear of discipline.

J. Benjamin's refusal to refer Plaintiff to Retina Specialist Willingham at the recommendation of ARNP Rackard, without fear of discipline.

K. Because ARNP Rackard knew from Plaintiff's records since 7-19-2013, Retina Specialist Willingham was the treating physician for "all" of Plaintiff's numerous eye diseases.

   (1) As a proximate result of Defendant's denial of investigation/care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

   (2) Plaintiff is blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff undersigned attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

6. **Failure to treat under 42 U.S.C. 1983 (Perez, Bottkol, Brown)**

**Plaintiff is entitled to relief against Defendants Hernandez Perez, Christine Bottkol, and Michael Brown for failure to treat known serious medical conditions or interference with such needed treatment in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five Statement of Facts, subsections (Perez, See grievance #19-6-25739. Bottkol, V. 26,27,40,41,55,56,59, 63, 69.) (Brown V. 32, 33,35,36 38,46) and as follows:**

A. Perez has made fraudulent statement that Plaintiff has declined (refused) the recommended treatment plan on at least two occasions, without fear of discipline.

B. Perez has continued Centurion's policy of denying and delaying health care to Plaintiff (inmates) as little care as possible, as late as possible, without fear of discipline.

C. Perez, continues Centurion's national corporate policy to provide Plaintiff (inmates) as little care as possible as late as possible in order to maximize profits (through fraudulent statements) without fear of discipline.

D. Bottkol made a fraudulent statement by stating, "Plaintiff's chronic uveitis was cured, and , there was no medical reason for Plaintiff to be seen by any kind of specialist," this was done without fear of discipline.

E. Bottkol at a medical appointment, in an aggressive manner snapped Plaintiff's head back with such force, Plaintiff and his aid had to tell Bottkol to stop, this was done without fear of discipline.

F. Bottkol in the halls of N.W.F.R.C. Medical Department stating to other Centurion medical staff that Plaintiff is faking and does not require medical treatment, without fear of discipline.

G. Bottkol in the presence of nurse Blake would not treat Plaintiff's pain level of 10 for a possible detached retina.

H. Bottkol in the presence of nurse Messer made a fraudulent statement, "That Plaintiff's medical records contain "NO" medical diagnosis by two (2) retina specialists that Plaintiff has harada's disease, "without fear of discipline."

I. Bottkol still in the presence of nurse Messer made an additional fraudulent statement that Plaintiff medical records contain "NO" referral by Hasty to Retina Specialist Willingham to treat Plaintiff's numerous eye diseases on 7-19-2013, without fear of discipline.

J. Brown made a fraudulent statement by stating Plaintiff is not approved to receive (legal) medical CD's, without fear of discipline.

K. Brown assisted in violation of federal (mail), state and Hippa laws by allowing Martin and Barton to possess Plaintiff's medical CD illegally, without fear of discipline.

L. Brown assisted Barton to deny Plaintiff access to his own medical records to continue to deny Plaintiff appropriate medical treatment, without fear of discipline.

M. Brown allowed Barton to illegally obtain Plaintiff's mail that contained a medical CD from two (2) Retina Specialists, Brooks and Willingham, to continue to delay and deny Plaintiff the appropriate medical treatment, without fear of discipline.

   (1) As a proximate result of Defendant's denial of a care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

   (2) Plaintiff is a blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

   WHEREFORE, Plaintiff seeks relief as noted below.

7. **Failure to treat under 42 U.S.C. §1983 (Martin, Austin)**

   **Plaintiff is entitled to relief against Defendant's Laura Martin and T.R. Austin for failure to treat known serious medical conditions or interference with such needed treatment in violation of the Eighth Amendment to the U.S. Constitution, as further set out in section five Statement of Facts, subsections ( Laura Martin V. 28,33, 36.) and (T.R. Austin V. 25, 36.) and as follows:**

A. Martin assisted in violation of federal (mail), state and Hippa laws by allowing Barton to obtain Plaintiff's medical CD illegally, without fear of discipline.

B. Martin assisted Barton to deny Plaintiff access to his own medical records to continue to deny Plaintiff appropriate medical treatment, without fear of discipline.

25

C. Martin allowed Barton to illegally obtain Plaintiff's mail that contained a medical CD from two (2) Retina Specialists, Brooks and Willingham, to continue to delay and deny Plaintiff the appropriate medical treatment, without fear of discipline.

D. Austin refused to investigate prison security staff for denying Plaintiff scheduled times for medication (steroid eye drops).

E. Austin refused to investigate Advance Eye Care Ophthalmologist Ben Hasty for administrative and criminal violation against Plaintiff which allowed Plaintiff to continue to be denied appropriate treatment. This investigation was "approved" by Centurion Medical Department and referred to the Office of the Inspector General for investigation per law.

F. Austin refusal to investigate prison officials and Centurion medical staff for mail room violations, Hippa violations, federal (Plaintiff medical CD) and state violations, which allowed prison officials and Centurion medical department to continue to deny Plaintiff appropriate medical treatment.

(1) As a proximate result of Defendant's denial of investigation/care, Plaintiff has suffered significant physical injury, mental distress, humiliation, and pain, and will continue to suffer such injuries in the future unless relief is granted.

(2) Plaintiff is a blind and a pro se litigant. It will be necessary for Plaintiff to retain counsel. When counsel is obtained by Plaintiff (undersigned attorney) to represent him, Plaintiff is entitled to an award of attorney's fees and costs.

WHEREFORE, Plaintiff seeks relief as noted below.

## VII.   RELIEF REQUESTED:

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/statutes.

WHEREFORE, Plaintiff respectfully requests of the Court:

Declaratory and Injunctive Relief as to Defendant Inch, as Secretary, Centurion of Florida, Advance Eye Care, Eye Care Clinic, and against Office of Inspector General, finding them in violation of the Constitution and laws cited and requiring them to provide the care and accommodation to which Plaintiff is entitled as shown above; compensatory damages as to F.D.O.C., Centurion, Advance Eye Care, Eye Care Clinic, Inspector General Office, and the

26

individual Defendants, Hasty, Wood, Perez, Lopez-Rivera, Benjamin, Bottkol, Barton, Blocker, Austin, Brown, and Martin; nominal damages against the individual defendants; reasonable attorney's fees and costs as provided by law; trial by jury for those counts so triable; and such other relief as the Court deems just and proper.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

11-12-2020
(Date)

(Signature of Plaintiff)

### IF MAILED BY PRISONER:

I declare (or certify, verify, or affirm) under penalty of perjury that this complaint was (check one):
☐ delivered to prison officials for mailing or ☐ deposited in the prison's internal mail system on: the __12th__ day of __November__, 2020.

(Signature of Plaintiff)

IV. PREVIOUS LAW CONTINUE

1. a. Kenneth E. Rickerson

b. Department of Corrections.

2. Monigue Richards, Charles W. Dodson          L.T. Case No.: 2018-CC-3647; 2019-CA-
002409;1D20-2941

3. Leon County, Second Judicial Circuit.

4. November 18th 2018..

5. Pending

6. N/A.

1. a. Kenneth E. Rickerson

b.  Warden Maddox, Florida Department of Corrections et. al.

2. Karen A. Grievers                          L.T. Case No.: 2017-CA-2093

3. Leon County, Second Judicial Circuit .

4.October 5th 2017

5. Pending

6. N/A

1. a. Kenneth E. Rickerson

b. State of Florida

2. John Jay Gontarek                          L.T. Case No.: 2000-CF-0156;
S.A. Case No.:00-156-CF-CFS-6-001

3.      Okaloosa County First Judicial Circuit.
4.      January 28th 2000.
5.      Pending.
6.      N/A.

Kenneth Rickerson #319515
Northwest Florida Reception Center Main Unit.
4455 Sam Mitchell Drive
Chipley FL 32428

Mailed From A State
Correctional
Institution



UNITED STATES POSTAGE
PITNEY BOWES
02 1P      $ 002.20⁰
0000932279    NOV 13 2020
MAILED FROM ZIP CODE 32428

US Clerk of Court
Northern District
111 N. Adams St.
Tallahassee, FL. 32301

LEGAL